## Case No. 4,955.

### In re FORTUNE.

[1 Lowell, 306; 1 2 N. B. R. 662.]

District Court, D. Massachusetts. Oct., 1869.

---

1 [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

B. F. Brooks. A. S. Wheeler, T. F. Nutter, and E. A. Kelly, for creditors.

Hull & Childs, of New York, for general creditors.

J. H. Whitman, for bankrupt.

LOWELL, District Judge. The bankrupt act of 1841 [5 Stat. 440], in its operation in the New England states, failed to make an equal distribution of the effects of the bankrupt because it preserved the lien which creditors can always obtain by attachment. Mr. Justice Story endeavored to remove this objection by construction. Had not the statute itself expressly reserved all liens, his argument that the assignment operated per se to dissolve attachments would certainly have been very strong, because the attachment is only an incident to the suit, and the bankrupt court might stay the suit; but the language of the act was fatal to this interpretation. Ex parte Foster [Case No. 4,960]; Peck v. Jenness, 7 How. [48 U. S.] 612. The insolvent law of Massachusetts dissolved all attachments, but made the costs a preferred debt, whenever the attaching creditor chose to prove his principal debt against the assets. The act of 1867 [14 Stat. 517] dissolves all attachments not four months old, but fails to make provision for the costs; for section 28 refers to costs connected with or growing out of the bankruptcy. This is to be regretted, because there is an obvious injustice in destroying a valid and legal lien without compensation for the necessary expenses attending it. The creditor cannot even prove these costs and take a dividend on them, because, until judgment is obtained, they are not a debt of the bankrupt, for they were not incurred for his benefit, nor at his request.

I am unable to say that the sheriff has any lien for these costs. The attachment merely gives him a right of retainer until the suit is disposed of, and if the plaintiff chooses to discontinue his suit, or to discharge his attachment, the officer's only remedy is by action against the plaintiff himself. The report of the case in New York, cited in the argument, shows that the law is otherwise there, and that there is a right of retainer by the sheriff against the will of both parties. Applying the bankrupt act to such a law, there is perhaps no difficulty in concluding that the dissolution of the attachment does not destroy the right of the sheriff to the lien for costs, which he would have if the parties had themselves agreed to dissolve it. But I do not see how I can adopt that view here.

I have always required the assignee to pay all reasonable and necessary expenses incurred after the date of the filing of the petition, because his title relates to that time, and he is the debtor, by relation, for all such expenses. The bankrupt is bound to see that his estate is kept together and preserved for the assignee, and all the necessary charges for the fulfilment of this duty must be allowed him. In re Grant [Case No. 5,693]. And there is no reason why such sums expended by any person having a lawful connection with the estate should not be paid. The premiums of insurance on policies which have come to the possession of the assignee, and all other similar charges come within this rule, because they were no part of the attachment, and the sheriff would have the right to retain the policies, boxes, &c., until he was repaid. It is like the case of a consignee of goods becoming liable for freight or demurrage; or of the owners of goods saved at sea taking them out of the hands of the salvors, and thereby becoming liable to pay salvage for which there would ordinarily be no personal action.

To recur to the more difficult question whether the mere expenses of an attachment which has been dissolved can be paid by the assignee. Mr. Justice Story authorized such a payment to be made in Ex parte Foster [Id. 4,960], and it is the practice in the district of New Hampshire, as Judge Clark informs me, to allow them. I know of no authority to the contrary. Upon the whole I have come to the conclusion that the bankrupt court may, in the exercise of its equitable jurisdiction, require the assignee to pay such charges as appear to have benefited the estate in his hands, though incurred before the petition was filed and not protected by any absolute lien. It is a very doubtful point, and I should be glad to have my decision reviewed. It is placed on this ground: The attachment of chattels under the laws of Massachusetts requires for its validity that a keeper should be put in possession to preserve the goods to answer the judgment. When the attachment is dissolved by the assignment in bankruptcy it must usually happen that the assignee gets the benefit of this keeping. In this case the benefit is proved as clearly as such a fact can be proved, and it was the distinct purpose of the creditors that this result should be obtained. Equitably considered the assignee has received a benefit, and should sustain the burden. There are some analogous cases to be found, though it must be admitted that they are rare. In England, under a statute which has since been modified, the assignees were empowered to pay for services rendered to a committee of trustees, though the deed appointing the trustees was never valid under the bankrupt law. See Griff. & H. Bankr. 1070, where this and some other similar decisions are mentioned by the learned authors. Our law at section 17 speaks of the necessary disbursements of the assignee, which is very like the language of the English statute under which those decisions were made. But I rely mainly upon the practice of Mr. Justice Story, which was undoubtedly followed throughout this circuit. Ordered accordingly.